AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 3 0 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
Samsung Galaxy Cellular Phone )
Model: S9 IMEI: 354824090913257 )
)

19MJ3191

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 & 960, 963 | Possession with intent to Distribute a Controlled Substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*
John C. Martinez, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/30/19

_____
*Judge's signature*

City and state: San Diego, California          Hon. Linda Lopez, United States Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Samsung Galaxy Cellular Phone<br>Model: S9<br>IMEI: 354824090913257 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, John C. Martinez, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device (collectively the **Target Device**):

> Samsung Galaxy Cellular Phone
> Model: S9
> IMEI: 354824090913257
> (**Target Device**) as more particularly described in Attachment A;

2. Agents seized the **Target Device** on June 17, 2019, from Nestor Dizan WONG's vehicle at the time he was arrested at the San Ysidro Port of Entry, San Diego, California, for the importation of approximately 36.96 kilograms (81.48 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952, 960, Importation of a Controlled Substance. At the time of his arrest, WONG was the driver of a white 2017 Honda Accord. The **Target Device** is currently in the possession of the Customs and Border Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, along

1

with Title 21, United States Code, Sections 963, Conspiracy to Import Controlled Substances, as described in Attachment A.

## EXPERIENCE AND TRAINING

4. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

5. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since March of 2003. Prior to becoming an HSI Special Agent, I was a United States Border Patrol Agent for approximately 14 years. I am currently assigned to the Contraband Smuggling Group at Otay Mesa, San Diego, California. I have received training from the Federal Law Enforcement Training Center and have attended the U.S. Border Patrol Academy, and other law enforcement investigative courses.

6. As an HSI Special Agent, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I have participated in and conducted investigations of violations of various federal criminal laws, including distribution of federally controlled substances, importation of federally controlled substances, conspiracy to import, possess and distribute federally controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code, as well as various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, trafficked, received and/or distributed federally controlled substances. Also, these investigations resulted in seizures of federally controlled substances. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO)

in various parts of the world, including Mexico and the United States.

7. I am currently responsible for conducting criminal investigations into trafficking, possession, distribution and sales of controlled substances that are being illegally trafficked across the United States/Mexico International Boundary through the use of vehicles. These investigations involve various concealment methods used in order to avoid detection of controlled substances from law enforcement officers. I have had numerous conversations with subjects regarding their usage, sales and possession of narcotics. I have participated in the execution of search warrants, the majority of which have involved narcotics trafficking and distribution offenses. I have participated in numerous search warrants at a variety of premises including businesses and residences. I have also sought numerous search warrants for cellular/mobile telephones in connection with my investigations.

8. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers.

9. Specifically, I have learned that narcotics traffickers often require the use of one or more telephone devices to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I also have learned that professional narcotics operations depend upon maintaining their extensive contacts. The use of telephones is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain to the local traffickers. The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers. I further have learned that narcotics

traffickers often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

10. Based upon my training and experience as an HSI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Narcotics traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Narcotics traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Narcotics traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Narcotics traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Narcotics traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Narcotics traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or narcotics proceeds.

    g. The use of cellular telephones by conspirators or narcotics traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data

includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone. SIM cards are necessary for a cell phone to operate properly. I believe there is a SIM card in the **Target Device**.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

13. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts that I believe are necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other HSI Special Agents and DEA Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**FACTS SUPPORTING PROBABLE CAUSE**

14. On June 17, 2019, at approximately 4:05 a.m., Nestor Dizan WONG attempted to enter the United States at the San Ysidro Port of Entry, San Diego, California. WONG was the driver of a white 2017 Honda Accord bearing California plate 7ZSY781. During primary inspection, WONG presented a U.S. Passport bearing his name and stated he was going to San Diego. A Customs Border Protection Officer (CBPO) conducted an inspection of the vehicle's trunk and observed multiple packages of a crystalline substance in the rear quarter panel. The CBPO also received two negative customs declaration from WONG. A canine then alerted to the rear door and rear trunk of the vehicle.

15. An inspection by a CBPO resulted in the discovery of seventy (70) packages of methamphetamine concealed within the front bumper, dashboard, firewall, both rear

5

doors and both rear quarter panels of the vehicle. A sample of a random package field tested positive for methamphetamine. The total weight was approximately 36.96 kilograms (81.48 pounds).

16. CBPOs seized the **Target Device** along with other items located in the vehicle. Post-*Miranda*, WONG stated he was the owner of the **Target Device**.

17. According to crossing records I accessed from the Treasury Enforcement Communications System (TECS), this vehicle (per California license plate 7ZSY781) had approximately 42 crossings in the last three months.

18. Based upon my experience investigating narcotics smugglers and the investigation in this case, I believe that WONG likely used the **Target Device** to coordinate the importation of methamphetamine into the United States.

19. Based upon my training and experience as an HSI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, SIM cards and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned that searches of cellular/mobile telephones associated with drug trafficking yields evidence:

    a. tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

20. Based upon my experience and investigation in this case, I believe that WONG is involved in narcotics trafficking activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of WONG, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.

21. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Accordingly, I respectfully request permission to search the **Target Device** for data beginning on March 17, 2019, up to and including June 18, 2019.

//
//
//
//
//

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

8

identification and extraction of data will complete the analysis within ninety (90) days from the date that the Court signs the warrant, absent further application to this Court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that Nestor Dizan WONG **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

26. Because the **Target Device** was promptly seized during the investigation of WONG's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by WONG continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from March 17, 2019, up to and including June 18, 2019.

27. THEREFORE, I request that the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

John C. Martinez
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 30 day of July, 2019.

Hon. Linda López
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property to be searched:

> Samsung Galaxy Cellular Phone
> Model: S9
> IMEI: 354824090913257
> (**Target Device**)

The **Target Device** is currently in the possession of Customs and Border Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone, including the SIM card, will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 17, 2019, up to and including June 18, 2019:

   a. tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 (Importation of a Controlled Substance and Conspiracy).